**Leonard Wymer WALLE, Petitioner,**

v.

**Maurice H. SIGLER, Warden of Nebraska Penal & Correctional Complex, Respondent.**

**Civ. No. 1494 L.**

United States District Court,
D. Nebraska.

April 30, 1971.

---

Kile W. Johnson, Lincoln, Neb., for petitioner.

Bernard L. Packett, Asst. Atty. Gen., for respondent.

## MEMORANDUM OF DECISION

URBOM, District Judge.

The petitioner, Leonard Wymer Walle, is a state prisoner in the Nebraska Penal and Correctional Complex pursuant to his conviction of second degree murder following a four-day jury trial in the District Court of Douglas County, Nebraska. The sentence was life imprisonment.

On March 7, 1969, the petitioner's request to proceed in forma pauperis was sustained and his petition for a writ of habeas corpus filed in this court. Counsel was appointed. The respondent, in the return to show cause, admits that the petitioner has exhausted his state remedies in accordance with 28 U.S.C.A. § 2254(b) by presenting the issues herein to the Supreme Court of Nebraska in State v. Walle, 182 Neb. 642, 156 N.W.2d 810 (1968). The petitioner is entitled now to a decision on the merits in this court.

Counsel for both parties have submitted a written stipulation, filing No. 11, agreeing, inter alia, that there exists no factual dispute to necessitate an evidentiary hearing and that the legal issues raised by the pleadings can be resolved by reference to the state court transcript and bill of exceptions and the legal authorities relied upon in briefs.

The Supreme Court of Nebraska in State v. Walle, supra, succinctly noted the following facts arising out of the murder:

"The record shows that Marilyn April Walle, the defendant's wife, was shot to death in their apartment in the Hamilton Hotel in Omaha, Nebraska, on September 1, 1966. Mrs. Walle was a dancer employed at the Roam Inn. She had given two performances on the evening preceding the murder and had returned to the hotel with the defendant at about 1:40 a. m.

"Leona Forsberg, an employee of the Roam Inn and a friend of the deceased, testified that the defendant called her at about 3 a. m. on September 1, 1966, and asked her to come to the hotel. When she arrived at the hotel, the defendant told her that his wife was dead; that ' "I shot her" '; and that ' "* * * it wasn't one shot; it was lots and lots of shots." ' Miss Fors-

berg then called the police and the defendant was arrested.

"The defendant denied that he had shot his wife, but offered no explanation for the murder other than it must have occurred while he was absent from the apartment for about 5 minutes, or while he was bathing. * * *"

The petitioner alleges that his state conviction is constitutionally defective, citing two reasons: (1) the state introduced several black and white photographs of the victim's body, over the timely objection of the petitioner, which, according to the petitioner, were gruesome and inflammatory; and (2) the trial court overruled the petitioner's motion for "legal necessities" or "collateral aids" after he had waived counsel and requested to proceed at trial *in propria persona*. In both instances, the petitioner contends, he was deprived of due process and equal protection as secured by the Fourteenth Amendment.

## PHOTOGRAPHS

The state introduced into evidence seven black and white photographs of the victim's body. Each photograph was taken at a different angle. Three were taken at the location of the murder, the Walle bedroom, and show the victim's body on the bed. The other four were taken at the county morgue.

The petitioner contends that the photographs were cumulative and prejudicial and lacked probative value, as two other photographs were introduced by the state without defense objection and one of those showed the body of the victim on the bed in the Walle bedroom.

The respondent, in the appellate brief before the state supreme court and now before this court, argued that all the photographs introduced into evidence were relevant and material to establishing the cause and manner of death as follows:

"Each of the exhibits, 1 and 3 through 8, were introduced for a specific purpose. The deceased was identified in each of them by Miss Forsberg (61:-13). The introduction of Exhibits 2 and 3 was not objected to by the defendant. Exhibit 7 was not used after it was received in evidence and was subsequently withdrawn (76:16). Exhibit 4 was used for the purpose of showing the jury the bedroom scene at the time the officers arrived and the location of the gun (90:1). Exhibit 8 was used by Dr. Scott, the pathologist who performed the postmortem, to point out the primary entrance wounds (73:8); Exhibit 5 was used to point out the exit wounds (74:2); and Exhibit 6 was used to point out an entrance wound that was not visible in the other photographs. From this it is quite apparent that each of the exhibits which defendant objected to, except for Exhibit 7 which was subsequently withdrawn, served a necessary and different purpose."

◼ Generally, the admission of photographs into evidence is a matter within the discretion of the trial court. See United States v. Leach, 429 F.2d 956 (C.A. 8th Cir. 1970); United States v. Cartano, 420 F.2d 362 (C.A. 1st Cir. 1970) and Maxwell v. United States, 368 F.2d 735 (C.A. 9th Cir. 1966). However, there exists a substantial distinction in the scope of judicial inquiry on the admissibility of photographs, depending upon whether the case deals with a habeas applicant or a federal defendant on direct appeal to a circuit court. In habeas corpus, the federal district court is not vested with the general reviewing power residing in state or federal appellate courts. Instead, as noted in Burns v. Beto, 371 F.2d 598 (C.A. 5th Cir. 1967), the power of the district court is circumscribed. The following passage from *Burns* is dispositive of the petitioner's contention in regard to the photographs:

"Burns' counsel concedes that the admission of photographs must necessarily rest largely in the discretion of the trial judge and that his action will not be disturbed in the absence of abuse of discretion; but argues that where the prejudicial character of the

pictures outweighs their probative value, they should be excluded. He further insists that, in an extreme case such as this, balancing of prejudicial character against probative value raises a question of due process which should be reviewed by the federal courts.

"As we understand the decision of this case by the Texas Court of Criminal Appeals, it did not balance the prejudicial character of the photographs against their probative value, but simply held that the photographs were admissible in evidence because they tended to settle disputed fact issues. The timing of the introduction of the photographs at the conclusion of the evidence was occasioned by the defendant Burns testifying in his own behalf, in substance, that he did cut the deceased but was not aware of the extent and severity of the cutting, and that he acted in self-defense.

"If we hold that the due process clause requires us to balance the prejudicial character of the photographs against their probative value, we will open wide the door of the federal courts to supervise the admissibility of evidence in state criminal trials. If that is to be done, even in so extreme a case as described in Judge Morrison's dissenting opinion ([Burns v. State of Texas, Tex.Cr.App.] 388 S.W.2d [690] 698, 699), we think that it should be done initially by decision of the Supreme Court of the United States. We hold that, so long as photographs accurately represent what they purport to depict and are logically relevant, their extreme gruesome and prejudicial character cannot make their admission in evidence amount to a denial of due process."

Also see Talbot v. Nelson, 390 F.2d 801, 803 (C.A. 9th Cir. 1968) and Blackwell v. Sigler, Civ. 1659 L (unreported memorandum U.S.D.C.Neb.1971).

■ As in *Burns* the Supreme Court of Nebraska did not attempt to balance the prejudicial effect of the photographs against their probative value but in af-

firming the petitioner's conviction rested its decision on the relevance of the photographs in resolving controverted factual issues. Since the photographs "accurately represent what they purport to depict and are logically relevant" I must conclude that their admission did not deprive the petitioner of either due process or equal protection.

## NECESSARY AIDS TO DEFENSE

At the trial the petitioner chose to proceed *in propria persona*. However, at various other stages of his criminal proceeding the petitioner was represented by counsel: at the pretrial conference, at the arraignment, at the hearing on the motion for new trial, and at the sentencing. The trial court granted the petitioner's motion to represent himself at trial, but not without strong admonitions against such a course of action (Supplemental Bill of Exceptions, 9:9–24). A compromise of sorts was arrived at by the appointment of a member of the public defender's office as "technical assistant." The trial court explained to the petitioner the role to be played by the "technical assistant" during the trial, as follows:

"If you want any advice of a technical nature, the public defender is your technical advisor even though he is not your attorney. You will conduct the trial proper yourself with such advice and information as you choose to ask your technical adviser." (Supplemental Bill of Exceptions, 11:10–14).

■ The bill of exceptions indicates that the "technical assistant" was active during the trial and directly participated in the defense on several occasions. For example, the technical assistant made objections to the photographs introduced by the state (Bill of Exceptions, 64:20 to 67:3), he cross-examined a pathologist called by the state (Bill of Exceptions, 79:9 to 83:13), and he counseled the defendant regarding the redirect examination of a defense witness (Bill of Exceptions, 152:2) and regarding the defendant's decision to testify (Bill of

Exceptions, 152:13 to 153:6). Consequently, it is not technically correct to characterize the petitioner's representation of himself as *in propria persona,* "in one's own proper person." Black's Law Dictionary (4th Ed. 1951).

■ The petitioner urges this court to hold that the trial court deprived him of due process and equal protection of the laws in its decision overruling his pretrial request for use of a public cell for purposes of research and study and a typewriter, carbon paper, legal notebooks, access to a legal library, and a daily transcript of trial testimony. This court's attention is directed to what the petitioner believes to be an analogous line of cases that hold state action violative of the due process and equal protection clauses because of discrimination resulting from the financial status of a state prisoner: Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963); Long v. District Court of Iowa, 385 U.S. 192, 87 S.Ct. 362, 17 L.Ed.2d 290 (1966); Roberts v. LaVallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967); and Gardner v. California, 393 U.S. 367, 89 S.Ct. 580, 21 L.Ed.2d 601 (1969).

In the context of the issue in this case, these cases are inapposite. Instead, the present case is controlled by the Eighth Circuit's decision in Minor v. United States, 375 F.2d 170 (C.A. 8th Cir. 1967). In viewing the attendant consequences following the decision to waive counsel the court stated:

" * * * The Constitution does not force an unwanted attorney upon a defendant. Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268; United States v. Washington, 3 Cir., 341 F.2d 277, 285. The accused may before trial elect to conduct his own defense. Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 92 L.Ed. 1356; United

States ex rel. Maldonado v. Denno, 2 Cir., 348 F.2d 12, 15; Johnson v. United States, 8 Cir., 318 F.2d 855, 856; Butler v. United States, 8 Cir., 317 F.2d 249, 258. However, as aptly stated by the Court of Appeals for the Fifth Circuit: 'Once it is found * * * that such an accused has properly waived his right to counsel, the effects flowing from that decision must be accepted by him, together with the benefits which he presumably sought to obtain therefrom.' Smith v. United States, 5 Cir., 216 F.2d 724, 727. Thus, *when accused elects to waive his constitutionally guaranteed right of counsel, he does so at his own risk and must accept the consequences of his action.* United States v. Redfield, D.C.Nev., 197 F.Supp. 559, 572, affirmed on the basis of the trial court's opinion, 9 Cir., 295 F.2d 249." (Emphasis added)

One of the risks of foregoing the assistance of counsel is that the lay defendant will have limited access to the collateral aids necessary to preparing a defense, especially where, as here, the defendant is incarcerated during the trial. The collateral aids requested were concomitants of the right to counsel and did not survive the waiver of the right to counsel. To hold otherwise would impose an unreasonable onus on the trial court and ultimately allow the unsuccessful defendant to convert the inability of the court to furnish aids normally provided by counsel into a weapon to destroy any resulting conviction.

■ The defendant's choice to defend himself involved a great risk. His choice carried with it the disabilities that inhere in it. Indeed, the trial court did not deny the collateral aids; the defendant by waiving counsel waived the collateral aids. No denial of due process or equal protection accompanied the waiver.

An order dismissing the petition will be entered.