James D. LEE, alleged to be Henry Daniel STULL, Jr.

v.

Leroy N. STYNCHCOMBE, Sheriff, Fulton County.

Civ. A. No. 17079.

United States District Court, N. D. Georgia, Atlanta Division.

Sept. 18, 1972.

James D. Lee, alleged to be Henry Daniel Stull, Jr., pro se.

Alston, Miller & Gaines, Atlanta, Ga., for defendant.

## ORDER

EDENFIELD, District Judge.

Petitioner, Henry Daniel Stull, Jr., who alleges himself to be James D. Lee, was indicted on charges of mail fraud. On March 31, 1972, petitioner waived arraignment and pleaded not guilty. Although counsel has been appointed, petitioner has chosen to conduct his own defense and is currently incarcerated in the Fulton County Jail awaiting trial.[1]

By his present motion petitioner claims that officials at the Fulton County jail have refused to supply him with law books and/or access to a law library necessary for his *in propria persona* defense. This, he maintains, is in violation of a recent United States Supreme Court ruling. The case to which petitioner refers is probably Gilmore v. Lynch, 319 F.Supp. 105 (D.C.Cal.1970), affirmed by the Supreme Court sub nom. Younger v. Gilmore, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971). Petitioner further claims that respondent has refused mail sent to him containing law books and legal supplies and that he has been denied access to a telephone and telephone books, all of which has hindered him in preparing his own defense. Finally, petitioner states that respondent has refused to provide him with necessary medical attention. Considered first will be petitioner's claim for those items he deems necessary for his defense.

The point of departure for examining the constitutionality of any administrative action by prison officials is the general rule that "federal courts will

---

1. Petitioner is also in custody pursuant to his conviction in state court on charges of theft.

not interfere in internal operation and administration of a prison unless its authorities have abused their discretion resulting in the mistreatment of the prisoner-applicant." Haggerty v. Wainwright, 427 F.2d 1137, 1138 (5th Cir. 1970); Krist v. Smith, 439 F.2d 146 (5th Cir. 1971). While most prison regulations "reflect the clear exigencies of a penal situation", Austin v. Harris, 226 F.Supp. 304 (D.C.Mo.1964), other rules, *viz.*, restrictions on legal materials, have been found to "touch upon interests of which the judiciary is more solicitous, and the burden of justifying these regulations is especially heavy, comparable to the 'overwhelming state interest' required by Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969)." Gilmore v. Lynch *supra*, [hereinafter *Gilmore*].

The fundamental question here is whether the restrictions complained of, even though normally within the discretion of jail officials, are rendered unconstitutional by the fact that they have been applied in this case to a prisoner who has chosen to conduct his own defense. This question can best be answered by considering the present case in light of the Ninth Circuit's decision in *Gilmore*.

In *Gilmore* the petitioners challenged certain rules and regulations of the California Department of Corrections which, they alleged, denied them equal access to the courts. Specifically, petitioners alleged the unconstitutionality of Prison Regulation 330–041 which greatly restricted the legal reference material available in the prisons. They attacked Director's Rule 2602 which required that "jail house lawyers" could not retain legal papers belonging to other inmates, and complained that the State Library had set up a restricted and inadequate list of law books available for prison circulation.

The prison officials responded that the restrictions complained of were necessary for reasons of economy and standardization in the state prisons, and that by insisting that all legal documents remain in the hands of the party to whom they pertained, no leverage was provided the jail-house lawyer to extort money from his fellow inmates. The court found that these interests were insufficient to justify regulations which had a crippling effect on the clearly defined right of the prison population to petition the courts for habeas corpus relief.

For purposes of the present case it is important to note that the right which the court held paramount to the prison regulations was "access to the courts" not access to legal materials per se.[2] The court in *Gilmore* made clear that the use of an adequate library was not the only way that the right of "access to the courts" could be ensured. The alternatives open to the State of California, said the court, are legion. "It might authorize Public Defenders to help inmates in collateral proceedings. Or it could institute programs whereby law students and professors could aid the indigent convict." 319 F.Supp. at 110. In the fact situation before it however, the prisoners' only means of access to habeas corpus relief was the petitions they drafted themselves with the aid of jailhouse lawyers and an inadequate library. Inherent in this situation was an unconstitutional discrimination between those affluent prisoners able to hire counsel or to buy law books (which they were allowed to receive) and the large number of indigents who received greatly inferior assistance because of the regulations restricting the number and use of law books. Because the state had failed to provide an alternative means of access to the courts, the offending regulation was enjoined.[3]

2. " 'Access to the courts,' " the court said, "is a larger concept than that put forward by the State. It encompasses all the means a defendant or petitioner might require to get a fair hearing from the judiciary on all charges brought against him or grievances alleged by him." 319 F. Supp. at 110.

3. The problem of the state law library was considered to be moot in view of the

That the concern of the court in *Gilmore* was properly for "access to the courts", not the state's prison library facilities, can be seen in the Supreme Court's decision in Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), extensively cited in the Ninth Circuit's opinion. In *Johnson* the Court held that *Tennessee* could not constitutionally ban fellow prisoner assistance in the preparation of habeas corpus petitions. In so doing, however, the Court said that the constitutionally required "access" could be satisfied by alternative means of assistance in the form of regular visits by senior law students, or members of the local bar association, "if the State elects to prohibit mutual assistance among inmates." At 489, 490, 89 S.Ct. at 751.

The emphasis on providing access to the courts, rather than particular facilities or services is found in this circuit where the Court said, "A regulation prohibiting the granting of assistance altogether might well be sustained if the state were to make available a sufficient number of qualified attorneys or other persons capable and willing to render voluntary assistance in the preparation of petitions for habeas corpus relief." Beard v. Alabama Board of Corrections, 413 F.2d 455, 457 (5th Cir. 1969). *See* Novak v. Beto, 453 F.2d 661 (5th Cir. 1971).

Finally, the question of a prisoner defendant's right to materials for aid in his own defense was directly answered by the district court in Walle v. Sigler, 329 F.Supp. 1278 (D.C.Neb.1971). In that case the petitioner alleged that, "The trial court deprived him of due process and equal protection of the laws in overruling his pretrial request for use of a public [private?] cell for purposes of research and study and a typewriter, carbon paper, legal note books, access to a legal library, and a daily transcript of trial testimony." At 1282.

Relying in part on a Fifth Circuit decision, Smith v. United States, 216 F.2d 724 (5th Cir. 1954),[4] the court held that the petitioner was entitled to no special privileges because he decided to represent himself:

"One of the risks of foregoing the assistance of counsel is that the lay Defendant will have limited access to the collateral aids necessary to preparing a defense . . . . The collateral aids requested were concomitants of the right to counsel and did not survive the waiver of the right to counsel. To hold otherwise would impose an unreasonable onus on the trial court and ultimately allow the unsuccessful defendant to convert the inability of the court to furnish aids normally provided by counsel into a weapon to destroy any resulting conviction.

"The defendant's choice to defend himself involved a great risk. His choice carried with it the disabilities that inhere in it." Walle v. Sigler, *supra*, 329 F.Supp. at 1282.

■ In light of the above authority, it is clear that petitioner is entitled to the relief he seeks only if he shows that either the County or the United States government has failed to provide reasonable access to the courts. From the record in the case thus far, even accepting as true all of petitioner's allegations, it is clear that no such showing can be made. The government has offered to supply petitioner with the best possible "means of access" to the court: representation by counsel.

From Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), through Argersinger v. Hamlin, 407 U.S.

---

court's order compelling an upgrading of the prison law library. The regulation prohibiting retention of documents by jailhouse lawyers was found constitutional when interpreted to mean that the documents could not be retained after they had been completed. 319 F.Supp. at 112.

4. In *Smith* the Court said: "Once it is found . . . that such an accused has properly waived his right to counsel, the effects flowing from that decision must be accepted by him, together with the benefits which he presumably sought to obtain therefrom." At 727.

25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (decided June 12, 1972), the Supreme Court has found the presence of counsel to be a necessity in criminal trials and "essential to fair trials" in this country. Gideon v. Wainwright, 372 U.S. 335, at 344, 83 S.Ct. 792, 9 L.Ed.2d 799. By his refusal to sign the pauper's affidavit and through oral communication with the court, petitioner has made clear that he wishes to waive his right to counsel. Once having offered petitioner that assistance considered to be essential to a fair trial, the government is under no obligation to provide petitioner with an inferior means of access to the courts. Such an obligation would imply the *reducto ad absurdum* that petitioner has a constitutional right to be afforded assistance inadequate to assure a fair trial. "The courts have not yet gone that far." *See* Juelich v. United States, 342 F.2d 29 (5th Cir. 1965).

By offering to appoint counsel the government has fully satisfied the requirement of Johnson v. Avery and Gilmore v. Lynch, supra, that prisoners may not be denied effective access to the courts. Neither the government nor the respondent is required to allow prisoners to pick and choose the means of access most convenient to them, irrespective of the burden this places on prison administration, expense, and discipline.

Petitioner has the right to waive representation by counsel. Having knowingly exercised that right he cannot claim that he has been denied due process or the equal protection of the laws.

Petitioner is entitled to no special privileges simply because he has decided to represent himself. He is, however, entitled to be protected from any unconstitutional discrimination or abuse of discretion in the dispensing of those privileges granted to the prison population as a whole. *See* Haggerty v. Wainwright,

427 F.2d 1137 (5th Cir. 1971); Granville v. Hunt, 411 F.2d 9 (5th Cir. 1969). Petitioner has asked that he be allowed to receive mail containing legal materials, that he be given access to a law library and a telephone, and that he be afforded adequate medical care. The County has ably responded, saying generally that petitioner's requested relief evinces not discrimination or unequal treatment, but rather constitutes a demand for treatment superior to that of other inmates.

The affidavit of Mr. L. B. Eason, Chief Jailer of the Fulton County Jail, states that the jail has no library; that inmates have no access to an outside law library; and that inmates are afforded access to a telephone and telephone directories only when it is necessary to make emergency calls.[5] The affiant further states that although inmate mail is censored, there is no policy of refusing mail, and that to his knowledge no mail sent to petitioner has been refused.[6] From this the court concludes that petitioner has not been unconstitutionally denied access to a law library or legal materials and that petitioner is entitled to receive mail properly sent to him subject to censorship for security reasons.

The affidavit of Dr. Calvin A. Brown, Jr., M.D., states that he examined the petitioner on August 25, 1972 and that in his considered medical opinion, "Mr. Lee's hypochondria greatly exaggerates any true medical problems he has and causes him to imagine physical problems he does not have. Mr. Lee will continue to receive medical attention which is adequate and equal to that received by the other inmates at the Fulton County, Georgia, Jail." In his letter to Mr. Eason of August 25, 1972, Dr. Brown evaluated in detail petitioner's medical complaints and recommended

---

5. Telephone jacks are being installed on the catwalks "and all inmates will have increased telephone access in the not too distant future."

6. In light of the County's response, and because of the court's disposition of petitioner's request to receive mail, no hearing is necessary on petitioner's claim that some mail addressed to him has, in fact, been refused.

that he receive medication for neuralgia and rectal discomfort, a dental evaluation and a psychiatric evaluation. On the basis of this affidavit and accompanying exhibits the court finds that petitioner has not been denied adequate medical care.

In light of the court's finding that petitioner is entitled to no special collateral aids for his defense and that he has not been unconstitutionally denied access to legal materials by respondent, the court once again advises petitioner that counsel has been appointed and recommends that his services be utilized. The court takes this opportunity to give petitioner early warning that it will treat with little sympathy a request that trial be delayed owing to a claimed lack of time for adequate preparation by petitioner or his counsel.

On the basis of the foregoing discussion and affidavits the court:

(1) Orders respondent to forward to petitioner mail which is properly addressed and sent to him, subject to the jail's censorship requirements; and

(2) Denies in all other respects petitioner's request for relief.