Charles HAMPTON et al., Petitioners,

v.

Hilbert SCHAUER, Director, Colorado
Department of Institutions, et al.,
Respondents.

Civ. A. No. C–3461.

United States District Court,
D. Colorado.

July 11, 1973.

Morgan Smith, Walter W. Garnsey, Jr., Jeffrey C. Pond, and Robert J. Moir, of Holland & Hart, Denver, Colo., for petitioners and intervenors.

Richard G. Singer, Associate Professor of Law, University of Cincinnati School of Law, Cincinnati, Ohio, co-counsel for petitioners and intervenors.

Richard G. McManus, Jr., Asst. Atty. Gen., Denver, Colo., for respondents.

## MEMORANDUM OPINION AND ORDER

CHILSON, District Judge.

This action was initiated by the plaintiffs (petitioners) pro se. Thereafter, Mr. Morgan Smith, a member of the Bar of this Court, entered his appearance on behalf of the petitioners. Later, Mr. Walter W. Garnsey, Jr., Mr. Jeffrey C. Pond and Mr. Richard J. Moir of the law firm of Holland and Hart, entered their appearances for the petitioners and the intervenors. Subsequently, Mr. Richard G. Singer of Cincinnati, Ohio, was permitted to appear as co-counsel for plaintiffs.

The defendants at all times have been represented by Mr. Richard G. McManus, Jr., Assistant Attorney General of the State of Colorado.

At the time of the institution of this action, the plaintiffs were inmates of the Colorado State Penitentiary. At the time of trial, the only original plaintiff still an inmate of that institution was Mr. Charles Hampton.

By this Section 1983 action, the plaintiffs and intervenors who will be referred to as "plaintiffs", allege their Federal Constitutional right of access to the Courts has been infringed by the defendant's failure to provide them with an adequate law library; by restricting their possession of typewriters to portable typewriters; and by refusing them uncontrolled use of prison duplicating equipment.

Trial on the merits was to the Court.

The United States Supreme Court considered the constitutional right of prison inmates to access to the courts in Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969) and later in Younger v. Gilmore, 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971). In the latter case, the Supreme Court affirmed per curiam the judgment of a three-judge district court in Gilmore v. Lynch, 319 F.Supp. 105 (N.D.Cal.1970).

In *Johnson,* the Court held that a prison regulation which prohibited inmates from assisting other prisoners in preparing applications for post-conviction relief, infringed the right of access to the courts, in the absence of some reasonable alternative providing assistance to illiterate or poorly educated inmates in preparing such petitions.

*Gilmore* following the rule in *Johnson,* held a prison regulation limiting the legal books provided for prisoner use was an infringement of the rights of indigent inmates to access to the courts in the absence of reasonable alternatives to insure such access.

With this rule in mind, we review the pertinent evidence.

### INADEQUATE LIBRARY

Plaintiffs contend that the prison library in the Colorado State Penitentiary is "inadequate" to enable indigent inmates to effectively exercise their right to access to courts.

The evidence discloses that prior to the year 1971, there was no workable prison library. Beginning in 1971, the prison administration, working in cooperation with some of the original plaintiffs, began to acquire additional legal material including books, subscriptions to services such as Law Week and the Prison Reporter, and other legal materials and at the time of trial, a substantial library had been acquired. The plaintiff, Hampton, testified that there had been a "1,000% improvement" in the library since this effort began in 1971. He also testified that he had filed some 20–30 court proceedings attacking his own conviction and some 30–40 court applications for other inmates by the use of the prison library. There was no evidence that any inmate was unable to present his cause to a court because the library was inadequate.

Associate Warden, Mr. Griffin, testified of the substantial improvement in the law library and of the plans of the prison administration to continue to enlarge it.

The plaintiff, to show the inadequacy of the library, offered in evidence the minimum standards for a prison library compiled by the Law Library Journal and the testimony of Mr. Ney, a lawyer experienced in the practice of criminal law, who testified as to his opinion as to what an adequate law library for the practice of criminal law should consist of.

Presently, the prison library at the Colorado State Penitentiary does not measure up to either of these standards, but the remarkable improvement of the library in the past two years and the expressed intention of the prison administration to continue its expansion and improvement, negative any intent on the part of the prison administration to thwart or impede the inmate's access to the courts by restriction of the size, content, or use of the prison library. There

is no evidence of any restrictive regulations as was the case in *Gilmore*.

■ Neither *Gilmore* nor *Johnson* equate access to the courts with the adequacy of a prison library. The prison library is but one factor in the totality of all the factors bearing upon the inmates' access to the courts which should be considered.

## PRISON REGULATIONS

■ The prison regulations bearing upon the inmates' access to the courts were admitted into evidence. These regulations were revised in January 1971 and adopted a statement of policy pertaining to inmates' right of access to the courts as follows:

"It is the intent of the Colorado State Penitentiary that there will be no interference with any prisoners access to the courts or to accredited counsel the only exception being the unreasonableness of the hour and the bodily movement which is inconsistent with his sentence and confinement."

"It is the intent of the Colorado State Penitentiary to afford inmates at reasonable times access to legal materials and a reasonable time to prepare their legal documents."

To carry out this policy, the regulations provide the following:

1. Inmates shall be allowed to contact attorneys for the purpose of representation, and any request for telephoning of attorneys shall be granted if requested at reasonable times and at the expense of the individual or attorney.

2. Inmates shall be allowed a reasonable amount of time to prepare their legal documents.

3. Prisoners may help other prisoners prepare documents or do typing.

4. Provision is made for an inmate law librarian working under the direction of the Assistant Warden, who may assist inmates in the use of the library.

5. The right of an individual inmate to purchase any law books he desires without restriction.

6. Provision for furnishing to the inmates, without charge, paper, stationery, carbon paper, clips, and other supplies for inmate use in presenting their proceedings to the courts.

7. Provision for use of prison duplicating equipment in preparing legal documents.

## PUBLIC DEFENDER

In 1969, the Colorado State Legislature enacted C.R.S. '63, 39–21–4 establishing a state public defender's office. The statute provides in part:

"When representing an indigent person, the state public defender shall: Counsel and defend him, whether he is held in custody, filed on as a delinquent, or charged with a criminal offense or municipal code violation, at every state of the proceedings following arrest, detention, or service of process; and, prosecute any appeals or other remedies before or after conviction that he considers to be in the interest of justice. In no case, however, shall the state public defender be required to prosecute any appeal or other remedy, unless the state public defender is satisfied first that there is arguable merit to the proceeding."

Mr. Rogers, the State Public Defender, testified that he is required to represent indigent defendants in the trial court and in direct appeals from convictions and that his office is available to indigent inmates of the state institutions for consultation on post-conviction matters. He is not required to conduct post-conviction proceedings for inmates, but is authorized to do so if he is satisfied that there is arguable merit to the proceeding.

The prison regulations provide:

"The public defender is to be admitted to consultation with any prisoner at any time and is to be specifically called when requested by any prisoner. Such visits, shall be at any reasonable hour and in hours which appear to be other than reasonable, the Warden, Deputy Warden or Associate Wardens

are to be contacted for clearance. This same policy shall apply to any attorney of record."

There is no evidence that the public defender has at any time refused to consult with any indigent inmate of the penitentiary, nor is there any evidence that the public defender has refused to represent any indigent inmate. The testimony of the plaintiffs reveal some dissatisfaction with the promptness with which the public defender has responded to requests for assistance, but there is no evidence that a request for consultation and assistance has been refused.

The Court finds that the foregoing facilities and assistance available to the inmates to assist them in exercising their right of access to the courts is effective and free from any restrictive acts or conduct on the part of the defendants.

### TYPEWRITER AND DUPLICATING EQUIPMENT

■ There remains for disposition two further complaints of the plaintiffs.

One relates to the restrictions concerning typewriters and the other relating to use of duplicating equipment.

The prison administration in April 1971 adopted the following regulation.

"Effective this date, only portable-type typewriters will be permitted to enter this institution. Standard size, upright, electric, or any other than portable typewriters will not be permitted to enter the institution."

The reason for this regulation is found in the answers to plaintiff's interrogatories where Mr. Griffin, the Associate Warden stated:

"Petitioners' access to privately owned standard size upright electric typewriters is curtailed because of the previous problem with inmates removing parts of state-owned standard-size upright typewriters to replace worn out or broken parts on personally owned machines."

There is no evidence that the restriction was otherwise motivated.

Additionally, the prison administration furnishes and maintains in the law library, a standard size upright typewriter for the use of those inmates who desire to use it.

The plaintiffs also complain that their access to the courts is denied them because they do not have uncontrolled and unsupervised access to the duplicating equipment at the prison. The evidence discloses that at one time, the inmates did have unsupervised use of the duplicating equipment but because of the use of the equipment by some inmates for an unauthorized purpose, (printing an underground newspaper) the use of the equipment is now permitted only under supervision and control of the prison administration.

Associate Warden Griffin, in answer to plaintiff's interrogatories states that there are six duplicating machines available for inmate use for the reproduction of legal materials and, additionally, upon request, they may have items copied on a Xerox machine.

He further stated:

"The denial of the open and uncontrolled use of the duplicating equipment at the Colorado State Penitentiary was brought about by the misuse of equipment by inmates and the need to control the amounts of paper and supplies."

The Court finds the restrictions with regard to the kind of typewriters and the controlled use of duplicating equipment has in no way infringed any inmates' right to access to the courts and the plaintiff's contentions to the contrary are without merit.

From the evidence, the Court concludes as a matter of law, that the defendants have not infringed the constitutional right of the plaintiffs to access to the courts and they are entitled to no relief.

It is therefore ordered that the complaint of the original plaintiffs and the complaint of the intervenors be dismissed and that judgment of dismissal shall forthwith be entered.