**William Joe JOHNSON, Petitioner,**

v.

**Harry S. AVERY, Commissioner, Department of Correction, and C. Murray Henderson, Warden, Tennessee State Penitentiary, Nashville, Tennessee, Respondents.**

**Civ. No. 4170.**

United States District Court
M. D. Tennesssee,
Nashville Division.

Jan. 21, 1966.

Pierce Winningham, III, Nashville, Tenn., for petitioner.

Henry C. Foutch, Asst. Atty. Gen., of Tennessee, Nashville, Tenn., for respondents.

**WILLIAM E. MILLER, Chief Judge.**

This proceeding was begun as a motion for law books, a typewriter, and release from solitary confinement under 28 U.S.C.A., § 1343(3) and the 1964 Civil Rights Act. It is, in its essential aspects, a petition for a writ of habeas corpus, and it is so construed. The case comes on to be heard upon the petition and return, a hearing, and post-hearing briefs. It is not clear whether the petitioner has presented his claim of illegal confinement under maximum security to the state courts, but in any event under present state rulings the habeas corpus remedy in Tennessee would not be adequate to reach this question on its merits.

For the past eleven months, the petitioner has been kept in solitary confinement in the state penitentiary for the sole and admitted reason that he has violated a prison regulation which forbids prisoners from preparing habeas corpus petitions for other prisoners. Such solitary confinement is to continue until terminated on order of the Commissioner of Corrections.

This Court is aware of the extraordinary case load imposed upon the federal courts by the steadily increasing number of habeas corpus applications. In the past calendar year, this Court formally disposed of approximately 170 petitions, or nearly one formal disposition every 1½ work days. This number does not include the very substantial number of informal dispositions, by letter or otherwise. Still, the prison regulation in question cannot be justified as an attempt to lessen the work load of the courts, for that is a problem which must be dealt with by the courts, and not by prison officials.

The present case presents a question of first impression and of undoubted importance. From the Court's experience with habeas corpus petitions, it is apparent that without the assistance of some third party, many prisoners in the state penitentiary would be totally incapable of preparing an intelligible petition, letter or request on their own behalf. The respondent does not deny this, but asserts that the solution is for such a prisoner to contact a licensed attorney to act in his behalf. Of course, the same incapacities (sub-standard intelligence, inability to write, etc.) which make it impossible for a prisoner to draft a meaningful habeas corpus petition also make it impossible for him to draft a letter which would be sufficient to arouse the attorney's interest. Furthermore, few indeed would be the lawyers who would volunteer to represent such prisoners, the great majority of whom are totally indigent.

For all practical purposes, if such prisoners cannot have the assistance of a "jail-house lawyer," their possibly valid constitutional claims will never be heard in any court. At stake, then, is not only the claim of the instant petitioner, but more importantly, under the broad terms of the regulation, the practical denial to an indeterminate number of prisoners who are incapable of preparing their own requests or petitions of their day in court. Without some assistance, their right to habeas corpus in many instances becomes empty and meaningless. It is within this framework that we must examine the instant petition.

The common law and the courts have not been blind to similar problems. There are numerous cases which affirm the right of one party to petition for a writ of habeas corpus on behalf of a second party whenever it is shown first, that the petition is authorized by the second party, and second, that the second party is himself incapacitated or incapable of filing a petition. See, for example, United States ex rel. Funaro v. Watchorn, 164 F. 152 (C.C.S.D.N.Y., 1908), and Collins v. Traeger, 27 F.2d 842 (9th Cir., 1928).[1] These cases prompted the revisers to amend 28 U.S. C.A. § 2242 so that it now reads:

> Application for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended *or by someone acting in his behalf*. (emphasis supplied to reflect amendment)

By preparing petitions for other prisoners, the petitioner is certainly acting in their behalf. True, he does not actually sign or verify the petition, or himself submit it to the Court, but the statute may easily and justly be interpreted to include the lesser act of assistance in preparation of the petition within the meaning of "signed and verified." Certainly, if a prisoner is incapable of signing and verifying a petition, he is incapable of preparing one. The objection, in any event, would be insignificant since, in the future, the petitioner could actually sign and verify the petitions which he prepares.

■■ Of course, the purpose of the statute is not to protect the petitioner, but to protect the constitutional rights of persons who are incapable of asserting their own rights. The situation, then, is this. Prisoners have a federal right to petition for a writ of habeas corpus. They have also a federal statutory right to have this remedy made *effective* by authorizing some third party to proceed in their behalf. Other prisoners have authorized the petitioner to do just that, and for his assistance the prison officials have placed him in solitary confinement for eleven months. Clearly, by the instant regulation, the prison officials have interfered with the statutory right of prisoners, incapable of acting for themselves, to have someone act on their behalf just as surely and effectively as if the officials had made it an offense for such prisoners to *request* such assistance. No matter how it is analyzed, the effect of the prison regulation now in question is to deprive these prisoners of their federal statutory right to have a habeas corpus petition filed on their behalf by a third party. This is not to say that state prison authorities may not impose reasonable restraints upon the activities of so-called "jail-house lawyers," activities which doubtless cause many problems, including problems of prison discipline and morale. It may be, for example, that a regulation prohibiting the giving or receipt of compensation for such services, or restricting and regulating the time when they could be rendered, if accompanied by reasonable sanctions, would pass muster. Indeed, a regulation prohibiting the practice altogether might well be sustained if the state afforded to prison inmates any reasonable alternative, such as an available list of qualified lawyers willing to volunteer their services, access to a public defender having statutory authority to represent them, or some other mode of ready and convenient contact with some qualified person capable of rendering them assistance in the preparation of their petitions or applications for habeas corpus relief. The present regulation, however, is absolute in its terms, it affords no alternatives, and it has the practical effect of silencing forever any constitutional claims which many prisoners might have.

1. See also, Ex parte Dostal, 243 F. 664 (N.D.Ohio, 1917) ; United States ex rel. Bryant v. Houston, 273 F. 915; (2d Cir. 1921) ; Nash v. MacArthur, 87 U.S.App. D.C. 268, 184 F.2d 606 (1950) ; and Wilson v. Dixon, 256 F.2d 536 (9th Cir., 1958) (one prisoner on behalf of another prisoner—denied for lack of authorization.)

786

The question is whether this prison regulation, not directly authorized by state statute or state law, can be allowed to nullify a federal statute and, in turn, to suppress the assertion of a federal constitutional right. The question answers itself.

■ The only problems remaining are technical in nature and may be quickly disposed of. The complaining party in this proceeding is not a prisoner denied the assistance of petitioner in preparing an application for habeas corpus relief, and a question of standing is presented. The stated purpose of the petition is to secure petitioner's release from solitary confinement so that he may continue to assist other prisoners in the preparation of their habeas corpus petitions. Hence, the instant petition is at least indirectly filed on behalf of the other prisoners. Furthermore, it will be seen that if the petitioner cannot assert the rights of the other prisoners, the same incapacities which prevent them from asserting their constitutional rights will prevent them from asserting their statutory rights under Sec. 2242. The objection is circular, and cannot prevail. The respondent further objects to any action which this Court might take since it might disrupt the administration and internal workings of the prison. Of course, that objection might be well founded if the prison regulation in question raised solely questions of state law, or if there were not available reasonable alternatives to the present regulation. But, as we have seen, neither of these conditions exists in this case.

■ The final objection, that habeas corpus will not lie to challenge the petitioner's custody in solitary confinement since he could not be released from total confinement, is answered by the well-reasoned and controlling case for this circuit, Coffin v. Reichard, 143 F.2d 443, 155 A.L.R. 143 (6th Cir., 1944), in which the Court of Appeals ruled, in part, as follows:

A prisoner is entitled to the writ of habeas corpus when, though lawfully in custody, he is deprived of some right to which he is lawfully entitled even in his confinement, the deprivation of which serves to make his imprisonment more burdensome than the law allows or curtails his liberty to a greater extent than the law permits. * * * A prisoner retains all the rights of an ordinary citizen except those expressly, or by necessary implication, taken from him by law. * * * When a man possesses a substantial right, the courts will be diligent in finding a way to protect it. The fact that a person is legally in prison does not prevent the use of habeas corpus to protect his other inherent rights. (p. 445)

See also, Alexander v. Rundle, 206 Pa. Super. 528, 214 A.2d 304; Stevens v. Myers, 419 Pa. 1, 213 A.2d 613; and Martin v. Commonwealth of Virginia, 349 F.2d 781 (4th Cir., 1965), in which the Court stated:

Ordinarily, a prisoner may resort to federal habeas corpus to make a collateral attack on federal constitutional grounds upon his state court conviction. The federal habeas corpus statute, 28 U.S.C.A. § 2241 (1959), makes the writ available for this purpose if the prisoner is "in custody in violation of the Constitution * * * of the United States. * * *" Over thirty years ago, the Supreme Court held that a sentence which the prisoner had not begun to serve did not satisfy the statutory requirement of "custody" even though a result of the challenged sentence was to thwart his eligibility for parole. McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934). If this decision stood alone, unqualified by later decisions of the Supreme Court, we as a lower court would be bound to follow it. Since then, however, the Court has relaxed the strictness of this interpretation and held that one on parole is in "custody" within the meaning of the term as used in 28 U.S.C.A. § 2241. Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). Still later, the Court, in broad terms, equated "custody" with "restraint of liberty." Fay v. Noia, 372 U.S. 391, 427, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

In light of these progressively developing notions as to the scope of the writ of habeas corpus, there is reasonable ground for thinking that were the Supreme Court faced with the issue today, it might well reconsider McNally and hold that a denial of eligibility for parole is a "restraint of liberty" no less substantial than the technical restraint of parole. Indeed, in Jones v. Cunningham, 371 U.S. 236, 243, 83 S.Ct. 373, 377 [9 L.Ed.2d 285], the Court said: "[Habeas corpus] is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose—the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty." Several states have already adopted this view, expanding in recent years the concept of habeas corpus to permit a prisoner to litigate his right to liberty at a future date.

█ Furthermore, it should be noted that the relief sought in the present case is, in fact, to release the petitioner from custody—from the very real custody of solitary confinement which is, in a sense, a jail within a jail. Thus, even if the Supreme Court were to follow McNally v. Hill today, the holding in that case would not prevent habeas corpus relief under the facts of the present case. Under the ruling in Coffin v. Reichard, supra, even though the petitioner is lawfully confined in the penitentiary, he has a right not to have confinement made more burdensome by being placed for an indefinite period in solitary confinement solely for violating a prison regulation which the Court now holds to be in direct conflict with 28 U.S.C.A. § 2242 and, therefore, void. Absent such regulation, there is no justification for the petitioner's custody in solitary confinement. His confinement, therefore, is arbitrary and capricious, and a violation of his rights under the Fourteenth Amendment.

██ There is also before the Court a motion to require the respondents to furnish the petitioner with good and wholesome food. In light of the disposition of his habeas corpus petition, no decision will be necessary on this motion. No consideration need be given to petitioner's request that he be furnished with a typewriter, since that request has now been withdrawn. Finally, petitioner has requested the Court to furnish him with various legal materials and Supreme Court reports. The Court agrees with the respondents that the state is not required to furnish these materials and reports to the petitioner. See, for example, Barber v. Page, 239 F.Supp. 265 (E.D. Okl., 1965). Furthermore, the Court notes that habeas corpus petitions need not, and indeed should not, contain extensive legal citations. All that is required is a short, simple and intelligible statement of the facts upon which the petitioner bases his claim for relief. Consequently, petitioner's request for legal materials and reports is hereby denied. For the reasons stated above, however, the Court holds that the petitioner should be released from solitary confinement and restored to his status as an ordinary prisoner. An order will be submitted accordingly.