**UNITED STATES ex rel. William RUSSELL**

v.

**Edward J. HENDRICK, Superintendent, and Joseph McGowan, Warden.**

**Civ. A. No. 71–2714.**

United States District Court, E. D. Pennsylvania.

May 21, 1974.

Christopher M. Laquer, of Temple University Law School Prison Project, Philadelphia, Pa., for plaintiff.

Stephen T. Saltz, Asst. City Sol., Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION

EDWARD R. BECKER, District Judge.

This is an action brought under 42 U. S.C. § 1983. The plaintiff, William Russell, presently an inmate at the State Correctional Institution at Huntingdon (Pennsylvania) seeks damages for the alleged deprivation of access to the courts on the ground that he was wrongfully deprived by officials of the Holmesburg Prison of certain lawbooks which he had ordered. The case was tried to the Court sitting without a jury. Plaintiff was ably represented, pursuant to Local Rule 9½, by Christopher M. Laquer, a third-year law student at Temple University, to whom the Court expresses its appreciation.[1] For the reasons which follow, relief will be

---

1. Defendants were represented, also ably, by Assistant City Solicitor Stephen T. Saltz.

denied. This opinion constitutes our findings of fact and conclusions of law mandated by F.R.Civ.P. 52(a).

## I. *Findings of Fact*

In October, November, and December of 1971, plaintiff was an unsentenced inmate at Holmesburg Prison, a county prison in Philadelphia housing both sentenced and unsentenced male prisoners. During that time defendant Edward J. Hendrick was the Superintendent of Philadelphia County Prisons, and defendant Joseph P. McGowan was Warden of Holmesburg Prison. A third defendant, Robert Fromhold, who was Deputy Warden of Holmesburg Prison, was also named in the complaint. However, the action was dismissed as to Major Fromhold after his death in a prison disorder on May 31, 1973.

In September or October of 1971, plaintiff ordered from Lawyers Co-Operative Publishing Company in Rochester, N.Y. the following books: Bailey and Rothblatt, Manual of Criminal Forms (1 volume); Anderson, Wharton's Criminal Law and Procedure (13th ed., 5 volumes); Anderson, Wharton's Criminal Evidence (12th ed., 3 volumes). He mailed the order to his sister-in-law in Camden, New Jersey, who forwarded it to the publishing company. The ordered books arrived at Holmesburg on October 21, 1971.[2] The two guards on duty in the mail room looked through their records for a record of the book order in accordance with regular prison regulations. These regulations provided that an inmate could receive books or other publications in the mail, but only if (1) they were mailed directly from the publisher, and (2) the mail room was notified in advance of the order on a form known as a D Form, filled out by the inmate and signed by the warden or his delegate. Because they could not find a D Form for this particular order, the guards called Warden McGowan for in-

structions. He directed them to follow the established procedure, which was to mail publications for which there was no D Form back to the publisher.

One to two weeks later Warden McGowan received an inquiry about the matter from his superior, Assistant Superintendent of Prisons Ernest Goldsborough, who had become aware of the case through a complaint made by plaintiff. A few days thereafter, plaintiff came to see Warden McGowan about the books, whereupon the warden phoned the publisher in Rochester and asked that the books be reshipped to plaintiff. The books were received in the last week of November or the first week of December 1971, but Wharton's Criminal Evidence was not received because it was by this time out of print.

At the time of the events described above, plaintiff had been convicted in Philadelphia Common Pleas Court in a case involving murder, aggravated robbery, burglary, conspiracy, and possession of firearms. His motion for new trial or arrest of judgment in that case was pending. Plaintiff was represented on that motion by Anthony J. DeFino, Esq., who had represented him from the preliminary hearing and continued to represent him through sentencing.

Mr. DeFino had filed plaintiff's motion for new trial on February 9, 1971. On October 29, 1971, he filed a brief in support of the motion. Mr. DeFino testified that the preparation of the brief entailed extensive legal research by him and his associate and that he conferred with plaintiff about the legal points to be raised in the brief, but did not think any of plaintiff's suggested case citations to be relevant and did not utilize them. Mr. DeFino testified that he and his associate used several law books to research the brief but did not use any of the books ordered by plaintiff, and that he was able to obtain access to all the law books which he felt he needed to

---

2. The books were sent on credit. Apparently Lawyers Co-Op was satisfied to send the books to plaintiff at "P.O. Box 6268 Apt. G763, Phila., Pa." According to an exhibit produced at trial, the bill for $196.10, plus other orders totaling $313.50, is as yet unpaid.

brief and argue plaintiff's motion. We credit Mr. DeFino's testimony.

Oral argument was heard by the Court of Common Pleas on plaintiff's motion on November 18, 1971. The motion was denied on July 12, 1972. On August 18, 1972, plaintiff was given two consecutive sentences of 10 to 20 years, to run concurrently with consecutive sentences of life and 2 years.

## II. *Discussion*

The right which the plaintiff complains he was denied is the right of a prison inmate to access to the courts. As the Supreme Court stated in Procunier v. Martinez, —— U.S. ——, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974):

> The constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights. This means that inmates must have a reasonable opportunity to seek and receive the assistance of attorneys.

There is no specific right of access to legal materials, although for an inmate not represented by counsel, access to the courts may be meaningless without the reasonable availability of law books. The cases recognizing more specific facets of the right of access to the courts involved unrepresented inmates and, therefore, do not control here. *See, e. g.,* Gilmore v. Lynch, 319 F.Supp. 105 (N.D.Cal.1970) (three-judge court), aff'd per curiam sub nom. Younger v. Gilmore, 404 U.S. 15, 92 S.Ct. 250, 30 L. Ed.2d 142 (1971) (right to lawbooks); Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969) (right to assistance of inmate "writ-writers"); United States ex rel. Silo v. Frame, Civ. No. 73–598 (E.D.Pa. June 11, 1973) (Lord, Ch. J.) (right to lawbooks).

In Bauer v. Sielaff, 372 F.Supp. 1104 (E.D.Pa., 1974), we considered a prisoner's complaint that he was deprived of his trial transcript and writing paper during a period when his appeal to the Supreme Court of Pennsylvania was pending. Discussing the nature of the right of access to the courts, we wrote:

> We recognize that a prisoner has the constitutional right to have reasonable access to the courts. Ex parte Hull, 312 U.S. 546, 61 S.Ct. 640, 85 L. Ed. 1034 (1941); Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). But access to the courts and not access to particular legal documents at specific times is the real issue. If a prisoner has reasonable access to legal counsel then he has the means to prepare, serve and file whatever documents are necessary.

Here, as in *Bauer,* we must conclude that the plaintiff, through counsel, had adequate access to the courts and was not in the least damaged by his inability to do his own legal research to supplement that of his attorney. There is no evidence that plaintiff had any legal training, and his counsel did not feel that the assistance plaintiff gave him on legal points was worthwhile. There is no contention that communications between plaintiff and his counsel were curtailed by prison authorities. Therefore, we find no violation of plaintiff's constitutional rights in the defendants' actions in sending the law books back to the publisher under the circumstances of this case.[3]

3. At the trial, there was conflicting testimony on the issue whether the defendants took reasonable steps to insure that plaintiff knew in advance of the regulation regarding the receipt of law books. Mr. McGowan, who was warden at the House of Correction at a time when plaintiff was detained there in 1969, testified that the policy of that institution at that time was for each inmate to receive a copy of the regulations "on the way in the front door." At Holmesburg, regulations were posted on the bulletin board, but inmates often removed the posted notices. According to McGowan, since inmates could spend money in only two ways, namely at the commissary or through use of the D Form, "a reasonably intelligent inmate would pick this information up about two hours after he hit the institution." Plaintiff testified, on the other hand, that the first he

### III. *Conclusions of Law*

1. This Court has jurisdiction of the parties and of the subject matter of this lawsuit.

■ 2. Access of state prison inmates to the courts is a constitutionally guaranteed right under the Fourteenth Amendment due process clause.

■ 3. Plaintiff was not denied his right of access to the courts by virtue of the delay in the delivery of law books to him, because he was adequately represented by competent counsel who during the relevant period was actively pursuing plaintiff's case.

heard of the regulation was the day McGowan telephoned the publisher to send the books again; he also claimed he had received printed materials in the past without using a D Form. In light of our conclusions derived from plaintiff's representation by counsel during the relevant period, we need not resolve this factual discrepancy and rule on the constitutionality of the D Form regulation and the constitutional adequacy of the prison administration's efforts to disseminate it. We do note however, that the regulation is less accurately described as a restriction on the right to receive printed material than as a restriction on the right to receive printed material without prior notification to the warden or his delegate. Thus it is more a procedural than a substantive regulation, and less likely to be found impermissibly in derogation of constitutional rights. *See* Procunier v. Martinez, —— U.S. ——, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). *But cf.* Van Ermen v. Schmidt, 343 F.Supp. 377 (W.D.Wis.1972) (constitutional challenge to regulations prohibiting receipt of lawbooks from any source other than publisher states a cause of action).