Melvin **WILSON**, Plaintiff,

v.

Robert **ZARHADNICK**, Superintendent, Colony Farm Prison Branch, Defendant.

Civ. A. No. 75–140–Mac.

United States District Court, M. D. Georgia, Macon Division.

Dec. 3, 1975.

Melvin Wilson, pro se.

B. Dean Grindle, Asst. Atty. Gen., State of Georgia, Atlanta, Ga., for defendant.

OWENS, District Judge:

Prompted by a hand-written letter deemed to be a civil complaint, in which Melvin Wilson, a state prisoner at the Middle Georgia Correctional Institute in Milledgeville, Georgia, complained that certain legal materials had been taken from him by prison authorities, this court held a hearing where it became apparent that no legal library existed for prisoners at the institution. Counsel for the state has subsequently informed the court that the prison authorities have no plans for establishing such a library at that facility. The decision not to act in any way thus presents the important issue of whether certain persons in this district are being denied due process of law by being denied access to the courts in that they have no access to a law library. Having concluded that rights are being violated and that relief is proper, the court enters this order constituting a permanent injunction in the form required by Rule 65, Federal Rules of Civil Procedure.

■ As an initial procedural matter, the court has determined that this case proceed as a class action on behalf of all present and future inmates at the Middle Georgia Correctional Institute. Because joinder of all prisoners at the Middle Georgia facility would be impractical, the questions of law and fact involving class members are virtually identical, the claim of this prisoner is typical of those of the class, he will fairly represent the class interests, and the defendant has "refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief," Rule 23(b)(2), Federal Rules of Civil Procedure, the requirements of Rule 23 have been met and this case can proceed as a Rule 23(b)(2) type class action. Although the plaintiff has not sought class relief, it is clear that other prisoners would be entitled to the same injunctive relief he obtains and that the adjudication of his rights will have the same practical effect as a decision in a class action. It is, therefore, appropriate that the court *sua sponte* certify this suit as a class action. *See* 3B Moore's Federal Practice ¶ 23.02–2.

The basic question is whether the defendant must provide a legal library for this class.

■ The Fourteenth Amendment guarantees due process of law to all persons in these United States. Whatever "due process" may mean, at a minimum it envisages the submission of claims to a court of competent jurisdiction and the fair and orderly resolution of the dispute by the tribunal. Obviously fundamental to this scheme is a person's ability in the first instance to present his claims to a court for judicial consideration. As a "person," a prisoner cannot be denied this critical right of access to the courts.

■ This principle was recognized in *Ex parte Hull,* 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941), where state regulations required that all legal papers be submitted to prison officials who were to determine if the papers were properly drawn before allowing them to be filed

with a court. After repeated efforts, the petitioner managed to get a habeas corpus petition to his father who submitted it directly to the Supreme Court. The Court ruled this system invalid, stating that "the state and its officers may not abridge or impair petitioner's right to apply to a federal court for a writ of habeas." 312 U.S. at 549, 61 S.Ct. at 642, 85 L.Ed. at 1036. Other cases show that the prisoner's right of access is not limited to habeas corpus petitions. For example, in *Procunier v. Martinez,* 416 U.S. 396, 419, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224, 243 (1974), the Supreme Court stated: "The constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights." *Accord, Andrade v. Hauck,* 452 F.2d 1071 (5th Cir. 1971).

■ The prohibition on abridging or impairing access to the courts is not limited to direct interference. The prisoner in *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), had been disciplined for violating a prison rule prohibiting one inmate from assisting another in the preparation of habeas corpus writs and other legal papers. The Court recognized that because there is no general right to counsel for convicted prisoners, the initial burden is on the prisoner to present his claim for relief with whatever assistance he can obtain in the prison. Noting that a prisoner without any legal assistance would likely be unable to meet this initial burden and hence never obtain judicial review, the Court reasoned that prohibiting the assistance of other inmates would effectively deny the right to file habeas corpus petitions. Holding that such regulation is invalid in the absence of another means of legal assistance, the Court quoted the language of the trial court: "For all practical purposes, if such prisoners cannot have the assistance of a 'jail-house lawyer', their possibly valid constitutional claims will never be heard

in any court." 393 U.S. at 487, 89 S.Ct. 747, 21 L.Ed.2d at 722.

Similar reasoning is found in *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), in which the prison regulation in effect prohibited the use by lawyers of paralegals and law students to interview clients in prisons, thus requiring lawyers to conduct interviews personally or hire licensed investigators. Reasoning that this could well entail higher costs to the attorney or make him less willing to represent a prisoner, the Court invalidated the rule. The Court stated, "Regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." 416 U.S. at 419, 94 S.Ct. 1800, 40 L.Ed.2d at 243.

▆▆▆ The teaching of these cases, then, is that because of the fundamental importance of access to the courts, the guaranteed access is not the mere theoretical right to submit claims to a court, but the opportunity to pursue judicial remedies effectively and intelligently. To do this obviously requires legal assistance. The inmate, unschooled in law and often poorly educated, faces monumental difficulties in ferreting out the complexities of habeas corpus and civil rights relief: where and against whom to file suits, what claims can be presented, and what procedural steps must be taken. More important, without some form of legal assistance the prisoner will often be unaware of what facts are important and relevant to his claim or, possibly worse, ignorant of his rights to relief and possible remedies. As the cases recognize, the prisoner without any legal assistance has such a severe handicap that the denial of assistance is in effect a denial of access. To ensure that a prisoner's access to the courts remains viable, therefore, a prisoner cannot be denied legal assistance any more than he can be denied actual access.

▆▆▆ The constitutional mandate that jail authorities not deny access to the courts through discouragement of legal assistance was translated into an affirmative duty to provide legal assistance in the landmark case of *Gilmore v. Lynch,* 319 F.Supp. 105 (N.D.Cal.1970) (three judge court), *aff'd sub nom. Younger v. Gilmore,* 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971) (per curiam). After noting that prisoners' lack of knowledge places them at a tremendous disadvantage in seeking judicial relief, the court defined access to the courts to encompass "all the means a defendant or petitioner might require to get a fair hearing from the judiciary on all charges brought against him or grievances alleged by him." 319 F.Supp. at 110. Relying on *Johnson v. Avery,* the court then stated that "some provision must be made to ensure that prisoners have the assistance necessary to file petitions and complaints which will in fact be considered by the courts." *Id.* Because the prisoners were furnished neither an adequate law library nor a suitable alternative means of legal assistance, the court found that they had been denied access to the courts and required prison authorities to expand the available legal reference materials or develop some other method of meeting the legal needs of the inmates.

▆▆▆ The Fifth Circuit has similarly concluded that as a concomitant to their right of access to the courts prisoners are entitled to legal assistance. Relying on *Gilmore* and *Johnson v. Avery,* the court in *Cruz v. Hauck,* 515 F.2d 322 (5th Cir. 1975) held that jail officials cannot refuse to provide an adequate legal library in the absence of some adequate alternative legal assistance. District courts have also reached this result. *E. g., White v. Sullivan,* 368 F.Supp. 292 (S.D.Ala.1973); *Hooks v. Wainwright,* 352 F.Supp. 163 (M.D.Fla.1972).

▆▆▆ Georgia prison authorities have this same obligation. The State of Georgia has enacted procedures for granting post-conviction relief to its convicted prisoners. Ga.Code Ann. tit. 50. Just as the state cannot deny appellate counsel to its indigent defendants when

it provides a statutory procedure, as it has in Ga.Code Ann. tit. 6, for appeals from criminal convictions, *see Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), the state cannot deny legal assistance to prisoners when it provides a statutory procedure for post-conviction remedies. Furthermore, because presentation of habeas corpus claims in a state forum is a prerequisite to federal habeas corpus consideration, 28 U.S.C. § 2254(b), impeding the prisoner's ability to pursue his remedies in the state courts impairs his access to a federal court. Finally, the prisoner's ability to assert his claims in a federal court depends on the legal assistance he is provided, and his right to viable access is abridged to the extent that legal assistance is denied. The remedies provided under both state and federal law become quite hollow for the Georgia prisoner who, wholly dependent on the state, has no legal assistance available to him and is thus unaware of his rights or unsure of how to vindicate them.

The cases indicate that the state's obligation to provide viable access to the courts requires at a minimum that it furnish legal materials to its inmates. On the other hand, the state need not furnish legal materials if other adequate means of legal assistance are provided. Prison authorities have suggested that an alternative does exist because state prisoners are provided legal counsel. The state's program, unfortunately, is not adequate legal assistance; therefore, prison authorities must meet the minimum standard and provide a library.

First of all, the burden is on the state to establish the adequacy of its alternative program. *Cruz v. Hauck,* 515 F.2d 322, 332 (5th Cir. 1975); *Novak v. Beto,* 453 F.2d 661, 664 (5th Cir. 1971). As stated in *Novak v. Beto, supra* at 664, the state must establish that its legal assistance program is an adequate alternative by "producing evidence that establishes *in specific terms* what the need is for legal assistance . . . and by demonstrating that it is reasonably satis-

fying that need." (Emphasis in original). No showing whatsoever of either of these factors has been made or offered in this case.

Moreover, it would probably be impossible for the state to sustain its burden based on its present program. To obviate the need for a legal library, the representation provided must encompass both civil rights actions and habeas corpus petitions and must be readily available to all prisoners. *Cruz v. Hauck, supra.* That either or both of these requisites is lacking in the state's present program is evidenced by the plaintiff's pro se appearance in this civil rights action as well as by the numerous civil rights and habeas corpus actions which have been filed pro se by other prisoners in this and other state institutions. It may well be that for various good reasons the lawyers in the state's program provide counseling in all cases, but pursue only those which appear to have merit. If this is the case, the program remains an inadequate substitute for a library because under *Ex parte Hull, supra,* access to the courts cannot be restricted by the interposition of a screening process between inmate and court. However burdensome on the courts and prison officials the result may be, it cannot be seriously disputed that a prisoner has a right to access to the courts to present even an apparently unmeritorious claim. Because this right of access includes the right to legal assistance, if counsel or some adequate alternative is not provided on any such claims, legal assistance in the form of a legal library must be furnished.

The court is unpersuaded by the state's argument that the relief is inappropriate because the named plaintiff is wealthy enough to afford counsel or purchase his own law books. This assertion is certainly foreclosed by the certification of this lawsuit as a class action because undeniably there are prisoners in the Middle Georgia Correctional Institute, members of the class, who are indigent. Even in the absence of class

certification the argument is shallow. To deny relief which is properly owing to a number of persons, who would obviously be affected by the decision, on the ground that the particular plaintiff before the court may not theoretically be entitled to it would be an overly technical application of the law and a waste of judicial resources as well.

In any event, the wealth of a prisoner seeking legal assistance should have no bearing on the relief available to him, as even the wealthy prisoner suffers the inherent handicap of being a prisoner: incarceration. The ordinary citizen with unrestricted mobility can freely seek out a lawyer or use legal materials which may be available in public libraries should he choose to represent himself as the Supreme Court has recently held· he has a right to do in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The inmate—whatever his wealth may be—is denied these same opportunities. Despite any wealth he may have, then, a prisoner is denied access to the courts equivalent to that available to other citizens. Such a distinction in the amount of access to the courts based on a condition of incarceration violates equal protection standards and cannot continue.

The state must furnish a library containing basic legal materials to enable prisoners to research the law in the two major areas of immediate concern to them: habeas corpus and civil rights of prisoners. Essential tools in such an endeavor include relevant annotated state and federal laws and modern state and federal cases. The court will not at this time specify the particular materials that the library must contain; the parties are given ten days within which to suggest what legal materials must be supplied to satisfy the state's constitutional obligation to provide legal assistance.

The state may, of course, establish reasonable regulations to govern the use of the library. The state shall have twenty days in which to submit any regulations it proposes to promulgate.