Dennis L. O'CONNER et al., Plaintiffs,

v.

Chief Justice John MOWBRAY et al., Defendants.

No. CIV-R-80-196-ECR.

United States District Court, D. Nevada.

Sept. 29, 1980.

Dennis L. and Marilyn J. O'Conner, Robert E. Ray, Ralph R. Sanchez, Albert R. Salman, Alice Khalife, in pro. per.

Richard H. Bryan, Atty. Gen., William E. Isaeff, Deputy Atty. Gen., Carson City, Nev., for defendants.

## MEMORANDUM DECISION

EDWARD C. REED, Jr., District Judge.

Plaintiffs reside at various locations in western Nevada. The O'Conners reside in Fallon, which is approximately equi-distant from Reno and Carson City. Mr. Ray lives at Stagecoach, approximately 27 miles east of Carson City, and 60 miles from Reno. Mr. Sanchez resides 5 miles from Carson City. Ms. Khalife lives 22 miles east of Carson City, between Dayton and Stagecoach. Mr. Salman resides in Reno. All of the plaintiffs anticipate being involved in, or are actually involved in, court litigation of various kinds and have a pressing need for access to a law library in order to do legal research. It appears that plaintiffs are employed during the day and hence are unable to use law libraries unless they are open after 5:00 p. m. None of the plaintiffs are represented by attorneys. Some of them indicate that they have not been able to obtain attorneys to represent them although they have sought to do so. Others of the plaintiffs state that they are unable to afford the services of an attorney.

Defendants are the Justices of the Nevada Supreme Court and the librarian for the law library maintained by the court. The Justices of the Supreme Court are charged by law with the supervision and control of the library and are authorized to make and enforce rules and regulations respecting the operation of the library (NRS 2.410) and the hours it shall be open for the use of the public (NRS 2.420).

Until July 1, 1980, each of the plaintiffs had been given authority by the court to have access to the library in the evening. It appears that in each case a letter was issued (usually by the Chief Justice) authorizing use of the library during the time the security guard for the building and library was on duty. This enabled plaintiffs to use the library until midnight from Monday through Friday, although the library was closed to the general public at 5:00 p. m. On June 24, 1980, the members of the court (except for Justice Gunderson who was on a trip out of the state at that time) met with Ms. Finnegan, the librarian, and determined that, commencing July 1, 1980, the policy would be changed. It was decided that only attorneys would be permitted access to the library during the evening hours. The reasons for this change were security requirements relating to the Court itself, as well as to the library. The offices of the Supreme Court Justices, their staffs and the Clerk of the Court are all situate in the same building as the library, so that an individual admitted to the building for purposes of going to the library may also be able to pass into the areas where these other offices are situated. However, it appears possible to lock up the non-library office areas in the building with no remodeling or with minor remodeling, so that individuals admitted to the building for purposes of going to the library would not have access to these other areas. The Justices were especially concerned about security for the building and their offices be-

cause of certain recent controversies relating to members of the court.

Additionally, Ms. Finnegan reported that objects had been moved about on a library desk and that a typewriter within the library had been used by someone who was not authorized to do so. She was further concerned about property, documents and equipment belonging to the State situate in the library. It does appear that the librarian has a separate office adjacent to the library which could be locked up during evening hours to prohibit entry by unauthorized persons.

The guard in the building during evening hours usually maintains a station in a front hallway. This is outside the areas used by the Justices and the Court Clerk, and also outside the library itself.

There has not been any change in the number of or hours for guards who provide security for the building and it appears that the change in procedures effective July 1, 1980, has been necessitated in the view of the Court solely for the reasons stated. There is no indication that anything has been taken from or damaged within the library area, nor was there any evidence presented at the hearing to indicate that such had occurred within the area of the building used by the Justices and their Clerk.

Counsel for the defendants argues that the Washoe County law library at Reno is available during the evening hours until 9:00 p. m., and contains an adequate library for use by plaintiffs. Defendants in turn argue that the Washoe County law library is inadequate for their needs and is too remote from their respective places of residence for their use. At least some of the defendants would have to travel considerably longer distances in order to reach the Washoe County library, and its usefulness would be detrimentally affected by the 9:00 o'clock closing hour.

Plaintiffs argue that, even though attorneys are subject to supervision and sanctions by the Supreme Court if they misuse the library, nevertheless attorneys should not be afforded access to the library not available to themselves, as pro se litigants, on an equal basis. They argue that they are litigating against attorneys who do have free access to the library of the Supreme Court, while they do not.

The jurisdiction of this U. S. District Court is invoked under 42 U.S.C. § 1983 and the Fourteenth Amendment to the U. S. Constitution. See also 28 U.S.C. § 1343. The Court must first determine whether there is a constitutional right to the use of the Supreme Court library by plaintiffs. As mentioned above, all of the plaintiffs are or intend to be litigants in the courts. In these cases the plaintiffs are opposed in court by attorneys, who have after-hour access to the Supreme Court library.

Effective access to the courts is a constitutional right. *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Gaglie v. Ulibarri*, 507 F.2d 721 (9th Cir. 1974). "Access to courts" encompasses all the means required for a litigant to get a fair hearing from the judiciary on the charges brought against him or grievances alleged by him. *Gilmore v. Lynch*, 319 F.Supp. 105 (N.D.Cal.1970), aff'd 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971); *Padgett v. Stein*, 406 F.Supp. 287 (M.D.Pa. 1975). Federal civil rights actions have been specifically included in the coverage of the constitutional right to access. *Bounds v. Smith*, supra, at fn. 17. In the absence of adequate assistance from persons trained in the law, access to an adequate law library becomes a constitutional right. See *Wade v. Kane*, 448 F.Supp. 678 (E.D.Pa.1978), aff'd 591 F.2d 1338 (3rd Cir. 1979).

On the bases of both equal protection (*Gilmore v. Lynch*, supra) and due process (*Padgett v. Stein*, supra) it appears to the Court that the plaintiffs have a right of effective access to the Supreme Court law library as the only practical means they have to obtain fair hearings in the litigation in which they are involved. NRS 2.410, in authorizing the State Supreme Court to make rules and regulations necessary for use of the library, directs: "Such rules or regulations shall assure that the library is

accessible for public use and to users in all parts of the state." The equivalent legislation as to county law libraries is not nearly as emphatic. See NRS 380.160. In fact, it is not even mandatory that each county establish a law library. See NRS 380.010.

The foregoing is not meant to denigrate in any way the lawyers who, as a recognized and trusted segment of the community, have been given the special privilege of after-hours access to the library. *Wright v. Lane County Commissioners, et al.*, 459 F.2d 1021 (9th Cir. 1972). Nor is it meant to downgrade the authority and the obligation of the Supreme Court of Nevada to see to the security not only of the library, but also of the offices of the Justices and their staffs and the Court Clerk. Certainly that authority and obligation is of great importance, but the constitutional right of access to the courts and equal protection for citizens in a like situation must be recognized and protected. Clearly, other segments of the community than lawyers are as equally trustworthy; e. g., clergymen, physicians, professors, accountants, teachers, etc.

Defendants' counsel points to the *Wright* case as authority for the position of the Supreme Court and its librarian restricting use of the library to attorneys during evening hours. The *Wright* case, however, may be distinguished from the instant case on at least two bases. First, in *Wright*, the individual who desired after-hours use of the county law library had available to him the use of the University of Oregon Law School library both evenings and weekends. It appears to the Court that the Lane County Law Library which was the subject of the *Wright* case and the University of Oregon Law Library were in the same town and in proximity to each other. This is not true of the case now before the Court. Several of the plaintiffs reside at considerable distances from the Washoe County law library (the alternate library suggested for use by defendants) and while that library is probably adequate for plaintiffs' uses, it appears that the Supreme Court library is a more complete library and more likely to meet the needs of plaintiffs.

There is a second basis of distinction between the *Wright* case and the instant one, found in the provisions of the respective state statutes. The Oregon statute specified that the law library was to be "permitted to be used by all attorneys at law . . . ." ORS 21.350(2). On the other hand, Nevada statutes make no specific provision for the use of the Supreme Court law library by attorneys. In fact, NRS 2.410 states that the rules and regulations to be promulgated by the State Supreme Court as to the use of the library "shall assure that the library is accessible for public use and to users in all parts of the state." NRS 2.420 specifically authorizes said Court to designate the hours that the law library shall be open for the use of the public. It seems the Legislature anticipated that hours beyond 8 A.M. to 5 P.M. might be required for the library to serve its purpose.

Philosophically speaking, public libraries should be open on an equal basis to all members of the community who have a legitimate need for their use. Restriction of use of libraries to particular segments of the community must have a reasonable relationship to the objectives of the authority and obligation given to those who control the libraries. In this case, it does not appear to the Court that the facts that a typewriter in the library was used without authority, that some things had been moved on a desk, and there have been recent controversies relating to Justices of the Supreme Court, constitute an adequate basis to prohibit pro se litigants from having equal access to the library with their attorney adversaries. No evidence has been presented indicating the existence of any special security problems. There is no showing in this case to justify the actions of the Justices in restricting after-hours use of the library by the pro se litigants, in light of the constitutional right of meaningful access to the courts. It has not even been suggested that pro se litigants would constitute a greater security risk than attorneys. This is not to say that the Justices are not entitled to establish reasonable regulations for after-hours access to the library in order to provide security for the library and the

Supreme Court building, so long as there is no unreasonable discrimination against any segment of the community in the use of the library. For example, the regulations in effect prior to July 1, 1980, appear to have afforded reasonable security protection.

The Court finds that the requirements for a preliminary injunction have been met by plaintiffs. See *City of Anaheim, Cal. v. Kleppe*, 590 F.2d 285 (9th Cir. 1978); 11 Wright and Miller, Federal Practice and Procedure, Section 2948; F.R.Civ.P. Rule 65. The plaintiffs do not appear to have any adequate remedy at law in this case. A judgment for damages for refusal of access to the library (if such could be obtained) would not make plaintiffs whole. It appears from the facts in this case that plaintiffs will be irreparably harmed if the preliminary injunction does not issue, if only because unconstitutional activity or the deprivation of a constitutional right constitutes in and of itself irreparable harm. 11 Wright and Miller, supra, at P. 440. In fact, each of the plaintiffs herein has a pressing need for library access in order to prosecute or defend pending litigation. This threatened injury to the plaintiffs outweighs any harm which may be reflected on the defendants; there has been no showing here that harm will result in the defendants on account of entry of the injunction. Plaintiffs have demonstrated a reasonable likelihood of success on the merits in the case for the reasons stated above. The public interest in access to libraries for those with a legitimate need for their use will be served by abatement of the selective restriction imposed by defendants.

The Court does not here reach possible constitutional rights which the general public may have to the use of a library on terms equivalent to those afforded attorneys.

It does appear that the defendants would have the right to grant extended use of the library to themselves as Justices of the Supreme Court, and also to their staffs, on a basis different from that provided to litigants, attorneys or others.

The Court does not intend hereby to prohibit the defendants from adopting reasonable rules rationally related to the operation and conduct of the library and the security of the library and the offices housed in the same building. It is just that the limitation restricting after-hour use by the plaintiffs, whereas attorneys are not as limited, has not been shown to be reasonable and rationally related to the objective of security.

IT IS, THEREFORE, ORDERED that a preliminary injunction shall be entered against defendants, their agents, servants, employees and attorneys and all other persons acting in concert with them, enjoining them from restricting plaintiffs' access to the Nevada Supreme Court law library on a basis not equivalent to the basis under which attorneys are afforded access.